UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MARCO B. HEYWARD,<br><br>Plaintiff,<br><br>v.<br><br>BART POLICE DEPARTMENT, et al.,<br><br>Defendants. | Case No. 3:15-cv-04503-LB<br><br>**ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: ECF No. 38 |

**INTRODUCTION**

The plaintiff Marco Heyward, who is proceeding pro se, sued the defendants BART Police Department ("BART") and two of its officers, Officer E. Poindexter and Officer A. Fueng, claiming that they unconstitutionally arrested and detained him. (First Amended Complaint ("FAC"), ECF No. 31.[1]) The defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). The court finds this matter suitable for determination without oral argument under Civil Local Rule 7-1(b) and vacates the March 31, 2016 hearing. The court grants the defendants' motion and grants Mr. Heyward leave to file a third amended complaint.

---

[1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page numbers at the tops of documents.
ORDER (No. 3:15-cv-04503-LB)

**STATEMENT**

On October 6, 2014, Marco Heyward was ascending the escalator at the Fruitvale BART station. (FAC at 2.) He was heading to the platform to take a southbound Fremont train. (*Id.*) Despite his disabilities, Mr. Heyward tried to run up the escalator but noticed three white men blocking his path. (*Id.*) As Mr. Heyward approached the men, he "kindly asked them to excuse him." (*Id.*) Mr. Heyward stumbled into one of the men while attempting to maneuver around them. (*Id.*) After apologizing, he politely explained to the men that it is customary for individuals ascending the escalator to "make a path on the left side so patrons who would like to catch approaching trains [can] do so unabated." (*Id.*) One of the men, Jerold Farver, became indignant and blurted out racial epithets, calling Mr. Heyward a "NIGGER." (*Id.*) (capitalization in the original) Mr. Heyward, "cognizant that he was outnumbered . . . intelligently expressed his dissatisfaction." (*Id.*) Mr. Farver "became emotionally charged and wanted to fight [Mr. Heyward]." (*Id.* at 3.) Other white persons in the station scolded Mr. Farver. (*Id.*) Mr. Heyward walked away from Mr. Farver and his companions and boarded a southbound train. (*Id.*)

Mr. Heyward was "seated and acting in a respectful manner" when the train stopped at the Bayfair station. (*Id.*) Two BART police officers, Officers Poindexter and Fueng, approached Mr. Heyward and asked him to come with them. (*Id.*) Mr. Heyward stood up and the officers handcuffed him. (*Id.*) Other BART riders inquired why the officers were arresting Mr. Heyward "because he didn't do anything." (*Id.*) Because Mr. Heyward was unable to walk without his cane, the two officers assisted him to the lower level of the Bayfair station. (*Id.*) The officers were very aggressive and unprofessional. (*Id.*) He inquired why he was being detained and told the officers that he was being cooperative and that he "didn't want to end up like Oscar Grant or Jerrod Hall." (*Id.*) He told them that he was the victim and asked "how they could take the word of a racist who was using racial epithets." (*Id.*) He also told them they could go back to the Fruitvale BART station to review the video surveillance footage and "verify [his] side of the [story]." (*Id.* at 2-3.) The officers instead arrested Mr. Heyward and took him to Santa Rita jail. (*Id.* at 3.)

Mr. Heyward filed his initial complaint on September 30, 2015. (Complaint, ECF No. 1.) On December 23, 2015, the court granted the defendants' motion to dismiss, allowing Mr. Heyward to

ORDER (No. 3:15-cv-04503-LB)   2

1  amend his complaint. (Order, ECF No. 30.) Mr. Heyward filed his FAC on January 20, 2016,

2  alleging constitutional violations under 42 U.S.C. § 1983. (FAC, at 5-7.) He sets forth two causes

3  of action. The first is titled "42 U.S.C. 1983" and asserts that 1) the arrest violated his Equal

4  Protection rights because it was motivated by discriminatory animus and 2) BART has

5  unconstitutional policies of using non-functioning cameras and inadequately training its officers.

6  (*Id.*) The second cause of action alleges that the officers used excessive force when they

7  handcuffed him and unlawfully arrested and detained him in violation of the Fourth Amendment.

8  (*Id.*)

9      Attached to Mr. Heyward's FAC are several documents relating to his arrest. (*Id.* at 9-17.)

10  Among them are the officers' report and the criminal complaint against Mr. Heyward, both of

11  which indicate that Mr. Heyward was arrested and charged with public intoxication in violation of

12  California Penal Code § 647(f). (*Id.* at 12-17.) Also attached is a photo showing BART's notice of

13  recording. (*Id.* at 18.)

14      On February 2, 2016, the defendants filed a motion to dismiss under Rule 12(b)(6). (Motion to

15  Dismiss, ECF No. 38.) Mr. Heyward opposed the motion on February 16, 2016 and on February

16  22, 2016 the defendants replied. (Response, ECF No. 42; Reply, ECF No. 43.)

17  **ANALYSIS**

18  **1. Rule 12(b)(6) Legal Standard**

19      A complaint must contain a "short and plain statement of the claim showing that the pleader is

20  entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon

21  which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 50 U.S. 544, 555 (2007).

22  A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the

23  'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

24  recitation of the elements of a cause of action will not do. Factual allegations must be enough to

25  raise a claim for relief above the speculative level . . . ." *Twombly*, 550 at 555 (internal citations

26  omitted).

27      To survive a motion to dismiss, a complaint must contain sufficient factual allegations,

28  accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

ORDER (No. 3:15-cv-04503-LB)　　　　3

U.S. 662, 678 (2009) (quoting *Tombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Tombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

The defendants argue that in his opposition, Mr. Heyward failed to address their arguments about his second claim. (Reply at 2.) They assert that Mr. Heyward consequently has conceded the issues that they raised. (*Id.*) "A motion to dismiss may not be granted solely because a plaintiff has not filed an opposition. Even if the plaintiff does not file a response to a motion to dismiss under Rule 12(b)(6), the district court must examine the allegations in the plaintiff's complaint and determine whether the plaintiff states a claim upon which relief can be granted." *Furnace v. Evans*, No. C 06-4229 MMC, 2008 WL 160968, at *4 (Jan. 15, 2008) (citing *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003); *Vega-Encarnacion v. Babilonia*, 344 F.3d 37, 40-41 (1st Cir. 2003); *McCall v. Pataki*, 232 F.3d 321, 322-23 (2nd Cir. 2000)). Here, the issue is more nuanced because Mr. Heyward filed an opposition. Still, given that he represents himself, the court construes his arguments liberally, considers the facts he pled in the FAC, and addresses the merits of the defendants' challenges to all claims.

**2. Equal Protection**

Mr. Heyward first claims that the officers arrested him based on discriminatory animus in violation of the Equal Protection Clause of the Fourteenth Amendment.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Clerburne v.*

ORDER (No. 3:15-cv-04503-LB)   4

*Clerburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). When a suspect classification is involved, the strict scrutiny standard applies and requires a close connection between the legislation or practice under examination and a compelling state interest. *See Palmore v. Sidotti*, 466 U.S. 429, 432 (1984) (Equal Protection Clause strives "to do away with all governmentally imposed discrimination based on race"). A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Here, Mr. Heyward has not alleged plausibly that the officers' actions were motivated by racial animus. Based on his allegations, the officers responded to someone else's complaints about him. He alleged animus (in the form of racial epithets) by that complainant. But he alleges nothing that plausibly shows animus by the officers. Instead, he argues only that the officers should have checked video surveillance before arresting him; that, he says, would have confirmed that he was the victim and not the aggressor. These allegations do not plausibly establish an Equal Protection claim. The court dismisses the claim with leave to amend.

### 3. Fourth Amendment – Lack of Probable Cause and Overlong Detention

Mr. Heyward alleges that the officers arrested him without probable cause and then detained him "for a prolonged period of time."

**3.1 Probable Cause**

Probable cause to conduct a warrantless arrest exists when the police have, at the moment of the arrest, "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause is a "practical, nontechnical conception" based on a "common-sense conclusion about human behavior," and it is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 231-32 (1983) (internal citations and

1  quotations omitted). Its existence is determined under the totality of the circumstances. *Id.* at 238;

2  *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

3      The probable cause determination has two steps. First, the court considers the historical facts,

4  meaning the events that occurred leading up to the arrest. *Ornelas v. United States*, 517 U.S. 690,

5  696 (1996). Second, the court considers whether these facts, viewed from the standpoint of an

6  objectively reasonable police officer, amount to probable cause. *Id.*; *Devenpeck*, 543 U.S. at 153

7  (the objective standard means that the arresting officers' subjective intentions are irrelevant to the

8  existence of probable cause). The "evidence supporting probable cause need not be admissible in

9  court, but it must be 'legally sufficient and reliable.'" *Acosta v. City of Costa Mesa*, 718 F.3d 800,

10  825 (9th Cir. 2013) (quoting *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002).

11      Mr. Heyward was arrested for violating California Penal Code § 647(f). Section 647(f)

12  provides that one "[w]ho is found in any public place under the influence of intoxicating liquor . . .

13  in a condition that he or she is unable to exercise care for his or her own safety or the safety of

14  others, by reason of being under the influence" is guilty of disorderly conduct, a misdemeanor.

15      Mr. Heyward does not plausibly allege that the officers lacked probable cause to arrest him for

16  public intoxication. Mr. Heyward attaches to his complaint a police report, which the court

17  considers under the incorporation-by-reference doctrine. Fed. R. Civ. Pro. 10(c) ("A copy of a

18  written instrument that is an exhibit to a pleading is part of the pleading for all purposes.") The

19  following facts establish probable cause: Officer Poindexter spoke with Mr. Farver, who told him

20  that "a black man with a 'beanie' fell into him while they were aboard a Dublin bound train."

21  (FAC at 15.) Mr. Farver told Officer Poindexter that "the man got in his face and was slurring

22  words" and that "the man was drunk and had beer 'breath.'" (*Id.*) Mr. Farver then identified Mr.

23  Heyward as the man in question. (*Id.*) Officer Poindexter asked Mr. Heyward what happened but

24  Mr. Heyward "was confused and did not answer any of [his] questions. [Mr.] Heyward smelled of

25  alcoholic beverages and his eyes were slow to track movement and were glassy." (*Id.*) Officer

26  Poindexter went back to Mr. Farver "to get more details." (*Id.*) Mr. Heyward also walked over to

27  Mr. Farver but he "was extremely unsteady on his feet" and "[h]e walked with a staggered gait and

28  stumbled several times." (*Id.*) While the court does not assume the facts in the report to be true,

ORDER (No. 3:15-cv-04503-LB)      6

United States District Court
Northern District of California

they are not inconsistent with Mr. Heyward's own account of the facts. Mr. Heyward does not plausibly allege any facts that establish an arrest without probable cause by, for example, alleging facts to support the conclusion that the historical facts, viewed from the standpoint of an objectively reasonable officer, do not amount to probable cause. The court dismisses the claim with leave to amend.

**3.2 Overlong Detention**

An arrestee or detainee may have a due process right to be released within a reasonable time after the reason for his detention has ended. *Brass v. County of Los Angeles*, 328 F.3d 1192, 1200 (9th Cir. 2003). Both the Fourth and Fourteenth Amendments do, however, permit a "reasonable postponement" of a prisoner's release "while the County copes with the everyday problem of processing the release of the large number of prisoners who pass through its incarceration system." *Id*. at 1202 (internal quotations omitted) (quoting *County of Riverside v. McLaughlin*, 500 U.S.44, 55 (1991)). In order for liability to attach to a [law enforcement] official in his individual capacity, a plaintiff must show that the prison official personally participated in his over-detention. *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010). In order for liability to attach to a [law enforcement] official in his official capacity (or for municipal liability to attach), a plaintiff must show that his over-detention was the result of a set of policies–or lack of policies–that amounted to a policy of deliberate indifference. *See Mortimer v. Baca*, 594 F.3d 714, 722-723 (9th Cir. 2010)

Here, Mr. Heyward pleads only that the detention was prolonged and does not plead facts about the length of the detention or that the BART police officers (as opposed to the County jail) were responsible for any overlong detention. The court dismisses the claim with leave to amend.

**4. Fourth Amendment – Excessive Force**

Mr. Heyward alleges excessive force by the police officers by their "aggressive handcuffing of him."

The Fourth Amendment to the United States Constitution protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. It is undisputed that Mr. Heyward was "seized" within the meaning of the Fourth Amendment. Thus, the issue before the court is whether the force used during his seizure was "objectively reasonable." *Arpin v. Santa Clara*

*Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)).

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal citations and quotations omitted). To do so, a court must evaluate "the facts and circumstances of each particular case, including [1)] the severity of the crime at issue, [2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [3)] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The most important of these three factors is whether the suspect poses an immediate threat to the safety of the officers or others. *Id.* The *Graham* factors, however, are not exhaustive. *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013). Indeed, because "there are no per se rules in the Fourth Amendment excessive force context," *Mattos v. Agarno*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc), courts are to "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Bryan v. McPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). "Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given[,] and whether it should have been apparent to officers that the person they used force against was emotionally disturbed." *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011) (citations omitted).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)); *see id.* at 396-97 ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment.") (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). This is because "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

Here, handcuffing someone to effectuate an arrest based on probable cause is not excessive force. Mr. Heyward alleges only conclusorily that it was "aggressive" but does not allege how or in what matter it was excessive. For example, in *Wilson v. County of Contra Costa*, police officers arrested the plaintiff, "grabb[ing] his arms extremely tightly while lifting him from a seated position and roughly carried him from the public lobby." 2015 WL 2124762, *6 (N.D. Cal. May 6, 2015). The officers also "tightened the handcuffs . . . so much that they cut deeply into the skin around his wrists and caused his hands to go completely numb and become discolored." *Id.* The plaintiff further alleged that this force "caused him severe pain, nerve damage, scars and deep bruises." *Id.* This, the court held, plausibly stated a claim for excessive force. Here, at the pleading stage, Mr. Heyward's conclusory allegations do not allege how the officers' force was excessive. The court dismisses the claim with leave to amend.

### 5. Monell

Mr. Heyward also alleges that BART had defective video cameras and that it failed to train its officers.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *Monell v. Dep't of Soc. Servs.*, 436 U.S.658, 690 (1978). A municipality, however, may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*. *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: 1) the plaintiff possessed a constitutional right of which he or she was deprived; 2) the municipality had a policy; 3) this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and 4) the policy is the moving force behind the constitutional violation. *See Plumeau v. School Dist. # 40 County of Yamhill*, 130 F.3d 432, 4438 (9th Cir. 1997).

Liability based on municipal policy may be satisfied in one of three ways: 1) by alleging and showing that a city or county employee committed the alleged constitutional violation under a

formal governmental policy or longstanding practice or custom that is the customary operating procedure of the local government entity; 2) by establishing that the individual who committed the constitutional tort was an official with final policymaking authority, and that the challenged action itself was an act of official governmental policy which was the result of a deliberate choice made from among various alternatives; or 3) by proving that an official with final policymaking authority either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional decision or action and the basis for it. *See Fuller*, 47 F.3d at 1534; *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*.")). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton*, 489 U.S. 378, 388 (1989)). Only then "can such a shortcoming be properly through of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389; *see Connick*, 563 U.S. at 60-61.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61 (citing *Bryan Cnty.*, 520 U.S. at 407). "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the

Constitution.'" *Id.* (quoting *City of Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part)). "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities . . . .'" *Id.* (quoting *City of Canton*, 489 U.S. at 392); *see also Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials . . . ."). Thus, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bryan Cnty.*, 520 U.S. at 409). "Policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.'" *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 407 (internal quotation marks omitted)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

While it might be better practice and improve safety to have cameras that operate, the court cannot conclude that BART's alleged failure to have operating cameras is a constitutional violation. And because Mr. Heyward has not alleged a predicate constitutional violation, his *Monell* claim fails too. The claim is pled conclusorily and does not state a claim.

## CONCLUSION

The court grants the defendants' motion to dismiss and dismisses Mr. Heyward's complaint without prejudice. He may file a second amended complaint by March 25, 2016.

**IT IS SO ORDERED.**

Dated: February 24, 2016

_____
LAUREL BEELER
United States Magistrate Judge